UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JERMAINE SMITH, | : | Case No. 3:11-cv-221 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**ORDER THAT: (1) THE ALJ'S NON-DISABILITY FINDING IS FOUND NOT SUPPORTED BY SUBSTANTIAL EVIDENCE, AND IS REVERSED; (2) THIS MATTER IS REMANDED TO THE ALJ UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g); AND (3) THIS CASE IS CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding the Plaintiff "not disabled" and therefore unentitled to disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. 12-22) (ALJ's decision)).

I.

On January 8, 2007, Plaintiff applied for DIB and SSI, asserting that he was disabled and could no longer work beginning March 1, 2005, because of kidney failure, hypertension, and congestive heart failure. (Tr. 163-170; 120-24, 125-27, 143). Plaintiff's applications were denied initially and upon reconsideration. (Tr. 114-126). Plaintiff timely requested a hearing before an ALJ. (Tr. 127-128).

A hearing was held on March 31, 2010, where Plaintiff appeared with his attorney and testified. An impartial vocational expert also appeared and testified. At the time of

the hearing, Plaintiff amended his alleged onset date to April 21, 2006. (Tr. 74). The ALJ denied Plaintiff's claim via written decision dated April 23, 2010. (Tr. 49-67). Following a timely filed request for review, the Appeals Council declined to review the ALJ's decision. (Tr. 41-43; 46-47).

At the time of Plaintiff's hearing before the ALJ, he was considered a "younger person" for Social Security purposes at age 37. *See* 20 C.F.R. §§ 404.1563(c); 416.963(c). Plaintiff graduated from high school (Tr. 73) and his prior employment history encompasses a variety of positions including work as a commercial cleaner, a delivery driver, a mail handler, an inspector, a dough mixer, and a bench assembler. (Tr. 100).

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since March 1, 2005, the alleged disability onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: (1) infrequent chest pain with a history of congestive heart failure; (2) chronic right sided pain with a history of kidney disease, and; (3) hypertension (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) subject to the following limitations: no climbing of ropes, ladders, or scaffolds; no repetitive bending or twisting at the waist; no exposure to hazards; no exposure to temperature or humidity extremes; no work requiring maintaining concentration on a single task for longer than 15 minutes at a time; and no lifting more than 10 pounds.

6. The claimant is unable to perform any past relevant work (30 CFR 404.1565 and 416.965).

7. The claimant was born on May 26, 1972, and was 32 years old, which is defined as a 'younger individual age 18-49," on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not he has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2005, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 14-22).

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to DIB or SSI. (Tr. 22).

On appeal, Plaintiff argues that: (1) the ALJ erred in failing to identify all of Plaintiff's severe impairments; (2) the ALJ failed to apply the correct legal criteria to the opinions of Plaintiff's treating physician; (3) the ALJ's findings regarding Plaintiff's high blood pressure are not supported by the record; (4) the ALJ failed to consider all of Plaintiff's symptoms in crafting the assigned residual functional capacity ("RFC");[1] and (5) the ALJ failed to properly assess Plaintiff's credibility. The Court will address each argument in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

---

[1] The Agency defines RFC as "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1).

> "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### A.

The record reflects that:

**1. Plaintiff's testimony**

Plaintiff testified to experiencing a variety of problems related to his hypertension, his history of congestive heart failure, his kidney disease, his low back pain, and his depression. He described having elevated blood pressure, even when on medication, and experiencing sharp chest pains at least twice per month. (Tr. 75, 93). Plaintiff alleged that his high blood pressure results in dizziness upon standing and that he experiences anxiety and depression resulting in panic attacks. (Tr. 76, 79-80).

Plaintiff also suffers from severe pain because of bulging discs in his back. (Tr.

77). He described this as a constant pain which radiates into his right side. (Tr. 83). On a scale from one to ten, Plaintiff stated that his back pain was a nine. (Tr. 83). Plaintiff's kidney disease limits the pain medications available to him, but he intends to try epidural steroid injections to help reduce his back pain. (Tr. 78, 84). Due to his back pain, Plaintiff is most comfortable lying down and can only lift five to ten pounds. (Tr. 84, 86). Plaintiff's back pain makes it difficult for him to dress himself. (Tr. 90).

Plaintiff described constant fatigue stemming from a variety of sources including his elevated blood pressure, his kidney disease, and even the sedating effect of his medications. (Tr. 76, 81). As a result of fatigue, Plaintiff can walk for only one block and stand for only twenty minutes. (Tr. 85). He also naps for as long as six hours every day. (Tr. 91, 94). He becomes fatigued when performing household chores and needs to rest. (Tr. 96). Plaintiff's fatigue also hinders his concentration to such an extent that he has difficulty watching the news or reading. (Tr. 79, 95).

    **2. Medical evidence of record**

In December 2006, Plaintiff was admitted to the Miami Valley Hospital intensive care unit as the result of a hypertensive emergency. (Tr. 252). His blood pressure was recorded at 235/150 and an echocardiogram revealed an ejection fraction of 35%. *Id*. He was diagnosed with congestive heart failure, chronic kidney disease, uncontrolled hypertension, and cocaine abuse. *Id*.

From April 2006 through 2007, Plaintiff received treatment through the Miami Valley Hospital Medical Surgical Clinic. (Tr. 334-345 & 356-375). Despite multiple

medications, Plaintiff's blood pressure remained troublingly high. *Id*.

On March 13, 2007, Plaintiff had a consultation with Dr. Aduafo who diagnosed Plaintiff with stage III kidney disease[2] and noted that his hypertension was likely secondary to his kidney problem. (Tr. 304). A left kidney biopsy was performed July 16, 2007 which revealed advanced chronic renal injury with prominent obliterative vascular changes and severe segmental glomerular sclerosis. (Tr. 346-349). Plaintiff continued treating with Dr. Aduafo . (Tr. 407-410). In September of 2007, Dr. Aduafo explained to Plaintiff that the back pain he had been feeling since his accident in April of 2007 was likely not caused by his kidney problem. (Tr. 408).

In June 2008, Plaintiff sought a second opinion for his kidney problems and met with Dr. Mark Oxman. (Tr. 411-413). Dr. Oxman recorded Plaintiff's blood pressure as 170/130 and agreed with the diagnoses of uncontrolled hypertension and renal disease. *Id*. Further, Dr. Oxman believed Plaintiff may have been suffering from a chronic pain syndrome. (Tr. 413).

In an attempt to find the cause for Plaintiff's back pain, a lumbar MRI was performed on August 26, 2008. (Tr. 420-421). The MRI revealed a moderate disc bulge

---

[2] The National Kidney Foundation ("NKF") created a guideline to help doctors identify each level of kidney disease. The NKF divided kidney disease into five stages. Glomerular filtration rate ("GFR") is the best measure of kidney function. The GFR is the number used to figure out a person's stage of kidney disease. A math formula using the person's age, race, gender, and their serum creatinine is used to calculate GFR. A person with Stage III kidney disease has kidney damage with moderate decrease in the GFR. In Stage III, a person is more likely to develop complications of kidney disease such as high blood pressure, anemia, and/or early bone disease.

and a central disc protrusion at L5-S1 with mild narrowing of the central canal and mild to moderate narrowing of the neural foramina. *Id*. There were also mild disc bulges at multiple other levels and mild facet disease throughout Plaintiff's lumbar spine. *Id*.

Shortly after the lumbar MRI, an echocardiogram was performed which demonstrated moderate to marked concentric left ventricular hypertrophy,[3] a mildly dilated aortic root,[4] and evidence of both decreased ventricular compliance and regurgitation. (Tr. 422-423). A colonoscopy was also performed revealing a hiatal hernia[5] and small internal hemorrhoids. (Tr. 324-325).

In September 2008, Plaintiff began treating with cardiologist Dr. Timothy Markus. (Tr. 436). Dr. Markus noted that Plaintiff's review of systems was positive for joint stiffness in his back, dizziness, headaches, anxiety, depression, and increased fatigue. (Tr. 437, 432). He also recorded elevated blood pressure readings. (Tr. 431, 436). Plaintiff then briefly saw Dr. Ahmad Abouhossein who found that Plaintiff was not suffering from any appreciable urinary problems. (Tr. 440-443).

In October 2008, Plaintiff sought mental health treatment through Samaritan

---

[3] Ventricular hypertrophy is the increase in size of the ventricles of the heart and is generally associated with pathological changes due to high blood pressure or other disease states.

[4] A dilated aortic root reflects a swelling of the aorta, usually representing an underlying weakness in the wall of the aorta.

[5] Hiatal hernia is a condition in which part of the stomach sticks upward into the chest, through an opening in the diaphragm. The diaphragm is the sheet of muscle that separates the chest from the abdomen, which is used in breathing and can cause chest pain.

Behavioral Health which he continued through March of 2009. (Tr. 446-462). Plaintiff was noted to experience persecutory delusions[6] and his mood was depressed. (Tr. 462). Plaintiff reported symptoms including feelings of sadness, anxiety, rapid thoughts, restlessness, chest tightening, poor concentration, and easy distractibility. (Tr. 458, 460). Plaintiff was diagnosed with a depressive disorder and was assigned a Global Assessment of Functioning ("GAF") score of 55.[7] (Tr. 446).

On November 10, 2008, Plaintiff visited with neurosurgeon Dr. Cynthia Africk. (Tr. 444-45). Plaintiff reported numbness and tingling down his right side and constant pain in his right flank. (Tr. 444). Though Dr. Africk did not see the need for back surgery, she did suggest that Plaintiff receive physical therapy and steroid injections. (Tr. 445). Plaintiff then began pain management treatment through Dr. Bruce Kay. (Tr. 463-67).

In 2008, Plaintiff also started seeing Dr. Schear as his primary care physician. (Tr. 469-490). Dr. Schear's blood pressure readings were consistently elevated. (*Id.*) Largely, Dr. Schear simply managed Plaintiff's medications, although he did record

---

[6] Persecutory delusions are a delusional condition in which the affected person believes they are being persecuted. Specifically, they have been defined as containing two central elements: (1) the individual thinks that harm is occurring or is going to occur; and (2) the individual thinks that the persecutor has the intention to cause harm.

[7] The Global Assessment of Functioning is a numeric scale (0 through 100) used by mental health clinicians and physicians to subjectively rate the social, occupational, and psychological functioning of adults, e.g., how well or adaptively one is meeting various problems-in-living. A score of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

symptoms including Plaintiff's back pain. (Tr. 482, 484). Dr. Schear continued to treat Plaintiff through the date of his hearing. (Tr. 469).

In November 2009, Plaintiff returned to see both Dr. Oxman and Dr. Markus. Dr. Oxman adjusted Plaintiff's medication and noted fatigue, lower extremity swelling, and elevated blood pressure. (Tr. 491). Dr. Markus recorded lightheadedness and back pain. (Tr. 492). Dr. Markus' review of systems remained positive for back stiffness, dizziness, headaches, anxiety, depression, and fatigue. (Tr. 493).

### 3. Non-treating source opinions

On April 4, 2007, clinical neuropsychologist Dr. Jerry Flexman examined Plaintiff. (Tr. 307-310). Dr. Flexman noted that Plaintiff's emotional state was depressed and that he felt fatigued. (Tr. 307). Plaintiff maintained fair eye contact only 60% of the time and was able to recall only three of six digits in reverse. (Tr. 308). Ultimately, Dr. Flexman diagnosed Plaintiff with depression and an undifferentiated somatoform disorder.[8] (Tr. 309). He assigned Plaintiff a GAF score of 60. (*Id.*) Despite assigning a GAF score indicating the presence of moderate symptoms or impairment, Dr. Flexman opined that Plaintiff would be only slightly limited in a number of vocationally significant functional areas. (*Id.*)

On April 18, 2007, state agency consultant Dr. Nancy McCarthy reviewed the psychological evidence of record and opined that Plaintiff's mental impairments were not

---

[8] A somatoform disorder is a mental disorder characterized by physical symptoms that suggest physical illness or injury – symptoms that cannot be explained fully by a general medical condition, direct effect of a substance, or attributable to another mental disorder.

severe. (Tr. 312). On August 30, 2007, the state agency instructed Dr. Karen Stailey-Steiger to affirm Dr. McCarthy's assessment. (Tr. 352). She followed that instruction on September 6, 2007. (Tr. 353).

On April 20, 2007, Dr. Dimitri Teague reviewed Plaintiff's medical records. (Tr. 326-333). Dr. Teague opined that Plaintiff could perform work requiring medium exertion. (Tr. 327-330). Another agency reviewer, Dr. Myung Cho, affirmed Dr. Teague's assessment five months later. (Tr. 354).

### 4. Treating source opinions

On August 29, 2007, Dr. Shobhana Gaur, one of Plaintiff's treating physicians from the Miami Valley Medical Surgical Clinic, completed a form outlining Plaintiff's limitations. (Tr. 350-351). She recorded a blood pressure reading of 240-140 and opined that Plaintiff could stand, sit, or walk a combined total of only four hours in an eight hour work day. (*Id.*) She further opined that Plaintiff is "extremely limited" in his ability to push, pull, bend, reach, handle, and engage in repetitive foot movements. (Tr. 351). Ultimately, Dr. Gaur opined that Plaintiff is "unemployable." (*Id.*)

### B.

First, Plaintiff alleges that the ALJ erred in failing to identify all of his severe impairments. Specifically, the Plaintiff takes issue with the fact that the ALJ determined that Plaintiff's back pain and depression were "not severe." (Tr. 55).

The ALJ must determine whether or not a claimant has medically determinable impairments that are "severe' or a combination of impairments that is "severe." 20

C.F.R. § 416.920(c). An impairment is "not severe" if it is a slight abnormality that has no more than a minimal effect on the ability to do basic work activities. SSR 96-3p.

An August 2008 MRI of Plaintiff's lumbar spine revealed facet disease and disc bulges across multiple levels, most severe at L5-S1. (Tr. 374-75). The radiologist stated that the minimal disc bulges "did not contribute to significant discopathy." (Tr. 375). He indicated that at L5-S1, there was "moderate disc bulge" with mild narrowing of the neural foramina. As the ALJ pointed out, in November 2008, Dr. Africk of the Ohio Neurosurgical Institute saw Plaintiff and stated that she did not think that his complaints of constant pain over the right flank were related to the MRI findings, in particular, the degenerated disk at L5-S1. (Tr. 398-99). Dr. Africk stated that the MRI did not show much trouble in terms of the nerves at that point – only mild narrowing of the foramen. (Tr. 399). Plaintiff argues that the fact that Dr. Africk recommended physical therapy and steroid injections (Tr. 399) undermines the ALJ's reliance on her findings. (Doc. 8 at 9). However, Dr. Africk specifically stated that Plaintiff needed to get into better shape, for which she recommended walking and swimming as well as some therapy and steroid injections. (Tr. 499). These facts do not support a finding that Plaintiff had a severe lumbar impairment.

With regard to Plaintiff's depression, the record contains 17 pages of mental health treatment records from Samaritan Behavioral Health. (Tr. 446-462). The records do in fact reflect that Plaintiff experienced depressive and anxiety related symptoms. However, Samaritan Behavioral Health assigned Plaintiff a GAF score of 55, which indicates only

moderate difficulties. While there is no specific reference in the ALJ's decision to the Samaritan Behavioral Health records, the records do not support a finding that Plaintiff's depression prevents him from performing basic work activities. There is no evidence that Plaintiff has anything other than minor limitations in daily activities, social functioning, concentration, persistence or pace, and he has had no episodes of decompensation of extended duration. (Tr. 15-16). *See also* 20 C.F.R. § 404.1520(a)(1). Moreover, Plaintiff testified that he is not taking any medication for depression, and is not receiving any counseling.

Accordingly, there is no evidence to support a finding that Plaintiff's back pain or depression constituted "severe" impairments.

## C.

Next, Plaintiff alleges that the ALJ erred in failing to apply the correct legal criteria to the opinions of Plaintiff's treating physician, Dr. Gaur. Greater deference is generally given to the opinions of treating medical sources than to the opinions of non-treating medical sources. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

In his decision, the ALJ references a "basic medical form for the Ohio Department of Job and Family Services." (Tr. 59, 350-51). The ALJ affords no weight to the opinions in that form because he finds that the conclusion that Plaintiff is "unemployable" lacks support and is inconsistent with the record as a whole. *Id.* This form, Exhibit 12F,

was completed by Dr. Gaur. (Tr. 350-51). Dr. Gaur's treatment records[9] do in fact refute the ALJ's finding that there "was no testing or exam performed" related to the completion of Exhibit 12F.[10] (Tr. 59, 336, 338-339, 341-43).[11]

Additionally, the ALJ failed to apply the treating source rule. *See* 20 C.F.R. § 404.1527(d)(3) ("Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."). The Commissioner argues that it was not required to apply the treating source rule because the opinion was conclusory. (Tr. 19). However, Dr. Gaur's opinion is not a broad conclusory statement that Plaintiff is disabled, rather it contains specific functional evaluations regarding Plaintiff's ability to sit, stand, lift, and perform eight separate work related physical functions. (Tr. 350-51). The opinion also indicates the conditions upon which it is based, and contains readings of claimant's blood pressure, bun, and creatine levels. (Tr. 350).

If the ALJ determines that Dr. Gaur's opinion should not be given controlling weight, despite the medical evidence in support, "the ALJ must still determine how much

---

[9] The records from Miami Valley Medical Surgical Clinic show that Plaintiff was seen regularly in 2006 and 2007, often by Dr. Gaur. (Tr. 310-60).

[10] Additionally, the ALJ's assertion that there was "no testing" is also refuted on the face of the document by the blood pressure reading of 240/140 on the form's first page. (Tr. 350).

[11] It is unclear from the record whether the ALJ knew that Exhibit 12F was completed by Dr. Gaur.

weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 582 F.3d 399, 406 (6th Cir. 2009).

Accordingly, the fact that the ALJ refused to offer any weight to Exhibit 12F because it was conclusory is not supported by the record. Additionally, the ALJ failed to address why Dr. Guar's opinion should not be given controlling weight, as required by the regulations. 20 C.F.R. § 404.1527(d)(2).

### D.

Next, Plaintiff alleges that the ALJ's findings regarding his high blood pressure[12] are not supported by the record.

The ALJ found that hypertension is one of Plaintiff's severe impairments, but he limited the impact of hypertension by finding that it was "stable" or "under control." (Tr. 54, 58). However, the ALJ focused on one isolated blood pressure reading of 126/90 in November 2009. (Tr. 447).

The record clearly contradicts even a limited finding that Plaintiff's blood pressure was under control in November 2009. Despite Defendant's argument otherwise, this Court finds that the ALJ applied the "under control" finding to the entire period of disability and failed to issue separate residual functional capacity findings before or after

---

[12] Normal blood pressure in adults is less than 120/80. The Merck Manual of Diagnosis and Therapy, sec. 7 chap. 71 (18th ed. 2006).

November 2009. Instead, the ALJ crafted a single residual functional capacity that discounts the severity of Plaintiff's symptoms on the contention that his blood pressure had "stabilized." In fact, blood pressure readings in Exhibits 27F and 28F postdate those in Exhibit 30F. A blood pressure reading from November 6, 2009, just three days after Plaintiff's blood pressure supposedly "stabilized," was 158/109. (Tr. 463). There are also readings from February 2010 at 162/90 and March 2010 at 132/80. (Tr. 470). In fact, the November 2009 reading is the second lowest measure of over forty blood pressure recordings in the record since Plaintiff's onset date. (*See* Doc. 8 at 13).

Accordingly, the ALJ improperly singled out the November 3, 2009 reading, and ignored a series of elevated blood pressure readings, failing to consider the record as a whole. Therefore, the ALJ's finding regarding Plaintiff's hypertension is not supported by the record.

**E.**

Next, Plaintiff alleges that the ALJ failed to consider all of Plaintiff's symptoms in crafting the assigned residual functional capacity. Where a claimant establishes the existence of a medically determinable impairment which could reasonably be expected to produce an alleged symptom, an ALJ must consider the effect of that symptom on the claimant's ability to work. 20 C.F.R. § 404.1529(a)-(b). An ALJ may not reject a Plaintiff's statements as to the intensity, persistence, or limiting effects of a symptom solely because objective medical evidence does not substantiate those statements. 20 C.F.R. § 404.1529(c)(2).

Here, the primary disabling symptom Plaintiff alleged is fatigue. Plaintiff testified that this fatigue limits his walking and standing and hinders his ability to complete household chores and maintain concentration and causes him to sleep for as long as six hours during the day. (Tr. 85, 96). Plaintiff testified that he was fatigued all of the time due to his hypertension. (Tr. 36). He also testified that his medications caused drowsiness and sleepiness, although less so than when he first started taking them. (Tr. 41). He testified that he could not walk more than a block or stand for more than 20 minutes because he became fatigued. (Tr. 45).

Plaintiff has established a number of objective sources for his subjective complaints of fatigue. For example, the ALJ found that Plaintiff suffers from a history of congestive heart failure and kidney disease. (Tr. 54). The ALJ also acknowledged hypertension as one of Plaintiff's severe impairments. (*Id.*) Furthermore, the Plaintiff attributes some of his drowsiness and sleepiness to the sedating effects of his medications, an observation echoed by Dr. Oxman. (Tr. 81, 491).

As Plaintiff established medically discernable impairments which could reasonably be expected to produce his fatigue, the ALJ was required to consider the effect of the symptom of fatigue on Plaintiff's ability to work. 20 C.F.R. § 404.1529(a)-(b). This Court was unable to identify any discussion or analysis of this symptom in the ALJ's decision.[13] Accordingly, the ALJ failed to consider the effect of Plaintiff's fatigue as

---

[13] The Court declines to infer such an analysis in the ALJ's decision based on the ALJ's limitation of "no work requiring concentration on a single task for longer than 15 minutes at a time." (Doc. 13 at 536-37).

required pursuant to 20 C.F.R. § 404.1529(a)(b).

**F.**

Finally, Plaintiff maintains that the ALJ failed to properly assess his credibility.

Throughout his decision, the ALJ notes Plaintiff's wide range of activities, his socialization, and ability to concentrate. (Tr. 18). Specifically, Plaintiff stated in an April 2007 consultative examination that he prepared food throughout the day; did dishes, laundry, dusting and other housework; took out the trash and shopped; and visited with friends and family. (Tr. 15, referring to Tr. 262-63). At that examination, Plaintiff also reported reading books, magazines, and newspapers, handling his own finances, drawing as a hobby, and going places with friends. (Tr. 263).

Moreover, the Sixth Circuit accords great deference to an ALJ's credibility assessment, particularly because the ALJ has the opportunity to observe the demeanor of a witness while testifying. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). It is not the province of the reviewing court to "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

**III.**

A sentence four remand provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a

final judgment on the Commissioner's decision and "may order the Secretary to consider evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175. "It is well established that the party seeking remand bears the burden of showing that a remand is proper under Section 405." *Culbertson v. Barnhart,* 214 F. Supp. 2d 788, 795 (N.D. Ohio 2002) (*quoting Willis v. Sec'y of Health & Human Servs.,* 727 F.2d 551 (6th Cir. 1984)).

## IV.

Based upon the foregoing, the Court concludes that remand is appropriate in this matter because there is insufficient evidence to support the ALJ's decision.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner to deny Jermaine Smith benefits be and is **REVERSED**, and this matter be and is **REMANDED** under sentence four of 42 U.S.C. § 405(g).

On remand, the Commissioner shall: (1) reconsider Dr. Gaur's findings as a treating physician, and address the requirements of 20 C.F.R. § 404.1527(d)(2) if rejecting Dr. Gaur's findings; (2) obtain testimony from a medical expert regarding Plaintiff's blood pressure readings; (3) evaluate the entire record of blood pressure readings when assessing the impact of Plaintiff's hypertension; (4) consider Plaintiff's fatigue, and expressly address any work limitations as a result; and (5) reassess Plaintiff's RFC.

**IT IS SO ORDERED.**

Date: 4/9/12     *s/ Timothy S. Black*
Timothy S. Black
United States District Judge